## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MARK J. LEACH,** | : | **Bankruptcy No. 09-21594BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **MARK J. LEACH,** | : | |
| | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Doc. # 21:  Debtor's Motion** |
| | : | **To Avoid Liens** |
| **WELLS FARGO HOME MORTGAGE;** | : | |
| **CHARLEROI FEDERAL SAVINGS** | : | **Doc. # 30:  Trustee's  Motion To** |
| **BANK; GENERAL ELECTRIC; LVN** | : | **Accept Payment From Debtor To** |
| **FUNDING, INC.; MOUNT BATTEN** | : | **Redeem Equity In Realty In Lieu** |
| **SURETY COMPANY, INC.;** | : | **Of Sale Of Same** |
| **NORTHWESTERN MUTUAL;** | : | |
| **ZEPPLIN MARINE; and SCHWARTZ** | : | |
| **IZENSON AND ASSOCIATES,** | : | |
| | : | |
| **Respondents** | : | |

## MEMORANDUM OPINION

Numerous issues in this bankruptcy case presently await resolution.

Debtor has brought a motion in which he seeks a determination concerning the scope of a mortgage lien of Wells Fargo Home Mortgage.  Specifically, he seeks a determination that the mortgage lien does not attach to real property on which his residence is situated (the residential property), but only to the real property that is adjacent to the residential property (the adjacent property).

Wells Fargo has asserted a cross-motion to reform the description of the property subject to the mortgage to include both the residential property and the adjacent property. It maintains that omission of the residential property was a mutual mistake. Wells Fargo also requests relief from the automatic stay to permit it to index the reformed mortgage and to pursue a mortgage foreclosure action in state court.

In the same motion debtor also seeks to avoid the judicial liens of: Charleroi Federal Savings Bank; General Electric; LVNV Funding; Mountbatten Surety Company; Northwestern Mutual; Zeppelin Marine; and Schwartz Izenson & Associates.

Finally, the chapter 7 trustee has brought a motion for leave to sell to debtor for the sum of $6,500 what she believes is the equity remaining in debtor's interest in the residential property after the exemptions he has claimed in the property are taken into account.

The cross-motion of Wells Fargo to reform the mortgage will be denied. It has not met its burden of proving by clear and convincing evidence that the absence of the residential property from the description of the property subject to the mortgage was the result of a mutual mistake. We are compelled by the evidence presented to conclude that only the adjacent property is subject to the mortgage held by Wells Fargo.

Because they have not responded to debtor's motion to avoid their judicial liens, a default order will issue avoiding the judicial liens of Charleroi Federal Savings Bank; General Electric; LVNV Funding; Zeppelin Marine; and Schwartz Izenson & Associates. A

hearing will be scheduled to determine at a later time whether debtor may avoid the judicial lien of Northwestern Mutual.

Finally, the motion of the chapter 7 trustee to sell the equity remaining in debtor's interest in the residential property above and beyond the exemptions he has taken in the residential property will be granted.

## BACKGROUND

Debtor and his wife, Doretta Leach, own as tenants by the entirety the real property on which their residence is located. The mailing address of the property is: 688 Maple Drive, Monongahela, Pennsylvania. They also own as tenants by the entirety adjacent real property on which they have constructed a tennis court and which they have extensively landscaped. The adjacent property has no mailing address of its own.

Debtor and his wife applied early in August of 1999 for a loan in the amount of $240,000. The primary purpose of the loan was to pay off a previous mortgage lien on the properties. The application was approved later that month.

The loan closed on August 31, 1999, at which time debtor[1] granted Crossland Mortgage a first priority mortgage in the amount of $240,000 to secure repayment of the loan. The description of the property securing the loan was of the adjacent property. The residential property was not included in the description. Crossland duly recorded the mortgage several days later.

---

[1] To avoid being pedantic, we will refer hereafter only to debtor rather than to debtor and his wife when it is clear from the context that we are speaking about debtor and his non-debtor wife.

Wells Fargo subsequently acquired Crossland and now holds the mortgage in question.

After debtor defaulted on the loan, Wells Fargo commenced an action in mortgage foreclosure in state court at some unknown time in 2004 with respect to both the residential property and the adjacent property. After a default judgment in favor of Wells Fargo issued, a sheriff's sale of the properties was scheduled for March 4, 2005.

Upon receiving notice of the sheriff's sale, debtor informed Wells Fargo that the description of the property subject to its mortgage referred only to the adjacent property and did not include the residential property. After confirming this, Wells Fargo moved to have its action in mortgage foreclosure dismissed. Precisely when the matter was dismissed is not indicated in the record.

On January 28, 2005, debtor granted a mortgage in the residential property to an entity known as the Mark J. Leach Irrevocable Trust to secure payment of an alleged debt in the amount of $140,000 arising from a promissory note debtor purportedly executed on March 14, 2004. The description of the property subject to the mortgage was of the residential property. Debtor's intention in granting the mortgage is transparent: he wanted to place the mortgage in the hands of an entity he controlled to prevent others from claiming a prior interest in the residential property.

Wells Fargo subsequently attempted, to no avail, to resolve with debtor what it insisted was a mistake in the description of the property subject to the mortgage. Debtor filed a voluntary chapter 7 petition on March 9, 2009. He undoubtedly filed his bankruptcy

petition when he did to prevent Wells Fargo from bringing an action in state court to reform the description of the property subject to the mortgage to include the residential property and then to foreclose on both properties. Debtor's wife did not join in the bankruptcy petition.[2]

The schedules accompanying debtor's bankruptcy petition identified the residential property and the adjacent property as assets of the bankruptcy estate. The residential property had a declared value of $200,000; the adjacent property had a declared value of $50,000.

Debtor claimed an exemption in the residential property in the amount of $20,200 pursuant to § 522(d)(1) of the Bankruptcy Code. He also claimed an $11,200 exemption in the residential property pursuant to § 522(d)(5), the so-called "wild-card" exemption. No objection to the claimed exemptions was ever raised.

Debtor brought the present motion before the § 341 meeting officially concluded seeking a determination that the mortgage lien of Wells Fargo attached to the adjacent property but not to the residential property. He also sought in the same motion to avoid in accordance with § 522(f)(1) of the Bankruptcy Code several judicial liens that had attached to the residential property and the adjacent property. Respondents to the motion were: Charleroi Federal Savings Bank; General Electric; LVNV Funding; Mountbatten Surety Company; Northwestern Mutual; Zeppelin Marine; and Schwartz Izenson & Associates.

---

[2.] Debtor's wife filed a voluntary chapter petition of her own in October of 2003. Debtor did not join in the petition. She ultimately received a discharge in February of 2005. Her bankruptcy case has no bearing on the issue presently under consideration.

Only Northwestern Mutual responded to the motion.  Despite having notice of the motion

and the hearing date, none of the other judicial lienholders responded to the motion.

It was determined after hearing oral argument on debtor's motion and the cross-

motion of Wells Fargo that an evidentiary hearing was required to resolve their dispute.

The matter is ready for decision now that the evidentiary hearing has taken place.

## DEBTOR'S MOTION TO AVOID LIENS

Debtor's motion to avoid the above liens consists of two self-styled "counts".

In the first "count" debtor seeks a determination that the mortgage lien of Wells Fargo

attaches only to the adjacent property and not to the residential property.  In the second

he seeks to avoid the above judicial liens on the theory that they impair the exemptions

he has taken in the residential property and therefore are avoidable by virtue of § 522(f)

(1) of the Bankruptcy Code.

## COUNT I

We begin with Count I.  The description of the property subject to the mortgage,

it was noted, refers only to the adjacent property and not to the residential property.

Debtor in effect asks the court to determine that the property description accurately

reflects what he and Crossland intended.

Wells Fargo asserted in its response to debtor's  motion that the absence of any

reference to the residential property in the property description was the result of a mutual

mistake made  by Crossland and debtor.  In its cross-motion Wells Fargo asserted, among

other things, that the property description should be reformed to include the residential

property along with the adjacent property.  Wells Fargo In effect seeks a determination that the property description does not accurately reflect what Crossland and debtor intended in 1999.  It further requested relief from the automatic stay to permit it to index the reformed mortgage and to pursue a mortgage foreclosure action against both properties in state court.

A court of equity has the power to reform a written instrument in the event of a mistake. *Regions Mortgage, Inc. v. Muthler*, 585 Pa. 464, 467, 889 A.2d 39, 41 (2005). It does not have the power, however, to reform the agreement of the parties; its power is limited to reforming the written instrument to make it conform to the agreement of the parties. *Kaufman v. New York Life Insurance Company*, 315 Pa. 34, 36, 172 A. 306, 307 (1934).

A mutual mistake occurs when the written instrument fails to set forth the "true" agreement of the parties. *Dadonna v. Thorpe*, 749 Pa. Super. 475, 478 (1999), *appeal denied*, 563 Pa. 702, 761 A.2d, 550 (2000).  Reformation is an appropriate remedy only when the parties are mistaken about facts in existence *at the time the instrument is executed. Zurich American Insurance Company v. O'Hanlon*, 968 A.2d 765, 770 (Pa. Super 2009).  The purpose of reformation is to make the written instrument conform to the intention of the parties. *Bogen v. New York Life Insurance Company*, 408 Pa. 472, 475, 184 A.2d 499, 500 (1962).

Denial by a party to an agreement that a mistake was made does not necessarily preclude a finding of mutual mistake. *Bollinger v. Central Pennsylvania Quarry Stripping*

- 7 -

& *Construction Company*, 425 Pa. 430, 432, 229 A.2d 741, 742 (1967).   If all the requirements for reforming it are satisfied, "mere negligent conduct" on the part of one party an agreement will not bar reformation of a written instrument in the absence of prejudice or violation of a positive legal duty. *General Electric Credit Corporation v. Aetna Casualty & Surety Company*, 437 Pa. 463, 480, 263 A.2d 448, 457 (1970).

It was stated more than a century ago that reforming an instrument requires a "much greater exercise of power" than merely setting aside a transaction.  It is a "much more delicate remedy than rescission". *Coppes v. Keystone Paint and Filler Company*, 36 Pa. Super. 38,  1908WL3644, *2 (Pa. Super 1908).  Care must be taken not to alter the agreement of the parties which underlies the written instrument.  Equity will not grant relief in a case involving a mistake of fact without "very clear proof". *In re Ridgeway's Account*, 206 Pa. 587,  590, 526 A. 21, 25-26 (1903).

In contemporary terminology, a party seeking to reform a written instrument because of a mistake has the burden of proving *by clear and convincing evidence* that a mistake was made in writing the instrument. *General Electric Credit*, 437 Pa. at 478, 263 A.2d at 456.  For this "elevated" standard of proof to be met: witnesses must be credible; the facts to which they testify must be distinctly remembered; the details must be remembered exactly and in due order; and their testimony must be "so clear, weighty and convincing" as to enable the finder of fact to come to a clear conviction, *without any hesitation*, concerning the facts at issue. *Lessner v. Rubinson*, 527 Pa. 393, 400-01, 592 A.2d 678, 681 (1991).

Common sense would suggest that Crossland and debtor undoubtedly intended the description of the property subject to the mortgage to include property of sufficient value to fully secure the underlying debt. While this common-sense principle is unassailable, it does *not* resolve the question of fact that is at issue here. We will explain why later on.

It also might be said to "stand to reason" that Crossland would have pursued a "belts-and-suspenders" approach and, as precondition to approving debtor's loan application, would have required that all real property in which debtor had an interest in August of 1999 be made subject to the mortgage. Applying this principle here would suggest that both the residential property and the adjacent property were meant to be included in the property description.

This approach will not suffice to resolve the present issue. The issue presented here is one of fact; it cannot be proved simply by invoking a generalization about what "reason" dictates. Resolving the issue by resorting to such a generalization is a fruitless exercise in scholasticism and begs the question whether it applies *in this specific instance*. Standing alone, this generalization is not evidence of anything.

If all that Wells Fargo had to do to prevail here is prove its cross-motion by a preponderance of the evidence, it probably would have prevailed. Unfortunately for Wells Fargo, it had to do so by clear and convincing evidence. After carefully considering all of the evidence presented at the evidentiary hearing, however, we conclude that Wells Fargo did *not* prove by clear and convincing evidence that both properties were required to fully

- 9 -

secure the underlying debt and that the absence of the residential property from the property description was the result of a mutual mistake by Crossland and debtor.

To be more specific concerning what Wells Fargo failed to prove by clear and convincing evidence, it produced no evidence concerning the respective values of debtor's interest in the two properties at the time of the closing in August of 1999. Without such evidence, we have no sound basis for concluding that Crossland and debtor intended the property description to include the residential property as well as the adjacent property.

Debtor stated in his bankruptcy schedules under penalty of perjury that the value of the residential property was $200,000 and that the value of the adjacent property was $50,000.

Such information at first glance might seem to indicate that both properties were required to fully secure the debt underlying the mortgage. By itself, the reasoning goes, the adjacent property did not have sufficient value to fully secure the debt. Such an inference in our estimation is not warranted in this instance.

Assume for the sake of argument that the values indicated in the bankruptcy schedules are accurate. They only indicate the respective values *as of March of 2009*, when debtor filed his bankruptcy petition. What must be determined here are the respective values of the properties *as of August of 1999*, nearly ten years prior to the petition date, when the transaction took place.

In light of the precipitous decline in recent years of the value of real estate, the likelihood that the values prevailing in August of 1999 were greater than they were in

- 10 -

March of 2009 well might be as significant as the likelihood that they were less than (or equal to) the values prevailing in March of 2009.  If they were greater in August of 1999 than in March of 2009, reliance on the values listed in the bankruptcy schedules to resolve the factual question concerning the intent of the parties in August of 1999 becomes problematic.

It follows from this that the values indicated in debtor's bankruptcy schedules are *not clear and convincing evidence* of the proposition that in order to fully secure the debt underlying the mortgage, the property description was supposed to also include the residential property.  Without something more, the schedules taken in isolation provide no basis for concluding *without hesitation* that the residential property had a value of $200,000 in August of 1999 and that the adjacent property had a value of $50,000 at that time.

Wells Fargo produced at the evidentiary hearing portions of an appraisal conducted in connection with the 1999 loan application.  The appraisal contained references to the residential property.  As interesting as this may be, the portions of the appraisal offered into evidence do not clearly and convincingly establish that Crossland and debtor intended the property description to include the residential property.

What is more significant, the portion of the appraisal offered into evidence did not include the opinion of the individual who did the appraisal concerning the values of the properties.  Without this, there is no basis for concluding that both properties were meant to be included in the property description.  It should be noted that even if this portion of

- 11 -

the appraisal had been produced, it would have constituted inadmissible hearsay because the individual who conducted the appraisal was not called by Wells Fargo to testify at the hearing.

The lone witness Wells Fargo called to testify was an individual who presently is employed by Wells Fargo as a "litigation specialist". This witness, however, was not involved in the 1999 transaction and had no personal knowledge concerning the values of the respective properties in August of 1999 or of whether Crossland and debtor intended for the property description to include the residential property.

All the witness did was to read statements or declarations found in some of the documents debtor signed or initialed which pertained to the 1999 transaction. The most that can be said about her testimony in this regard is that she authenticated the documents from which she read. The purpose of such testimony is not clear, as the authenticity of the documents was not in dispute. If her testimony was supposed to do more than this, it was not successful.

Wells Fargo confronted debtor during cross-examination with the statements he purportedly made in the above documents which he signed or initialed. The statements and declarations, Wells Fargo asserts, "clearly" establish that Crossland and debtor intended the property description to include both the residential property and the adjacent property.

The loan application submitted by debtor, for instance, listed 688 Maple Drive as the "Subject Property" and indicated that the property would be the "Primary Residence".

- 12 -

The HUD-1 Settlement Statement indicated that the "Property Location" was 688 Maple Drive.

It was stated in The Truth-In-Lending Disclosure that the "Property Address" was 688 Maple Drive and that debtor was granting Crossland a security interest in 688 Maple Drive.

The Occupancy Declaration listed 688 Maple Drive as the property address and stated that debtor would occupy the "Subject Property" as his principal residence.

Finally, the mortgage itself provided that the property subject to the mortgage was located at 688 Maple Drive.

Debtor did not deny that the above statements and declarations are found in these documents.

The testimony of debtor concerning these statements and declarations could be taken to indicate that Crossland and debtor more likely than not intended the property description to include the residential property.   But, as we have explained, the preponderance-of-the-evidence standard does not apply here.   If it is to prevail on its cross-motion, Wells Fargo must prove by clear and convincing evidence that Crossland and debtor so intended.

In our estimation, the statements and declarations attributed to debtor in the above documents do not compel us to conclude without hesitation that the property description was supposed the residential property.   While the mailing address of the residential property officially is 688 Maple Drive, the adjacent property has no mailing address of its

- 13 -

own. Because of this, debtor testified that he considered 688 Maple Drive to be the *de facto* address of the adjacent property and frequently referred to it in that manner. Whether debtor was correct in considering this to be the address of the adjacent property is not relevant here. All that matters for present purposes is that he so considered it.

Cast in this light, these statements and declarations "cut both ways". The statement that the "Subject Property" was located at 688 Maple Drive and that debtor would occupy it as his "Primary Residence" could be understood, as Wells Fargo contends, that the property description was supposed to include both the residential property and the adjacent property. Or they could be understood, as debtor maintains, that the property description was supposed to include the adjacent property but not the residential property because debtor considered the adjacent property to be part of his residence.

To its detriment, Wells Fargo did not convincingly undermine debtor's credibility when he testified that he frequently identified the adjacent property as also being located at 688 Maple Drive. Without further evidence to resolve this latent ambiguity, we are not willing to conclude without hesitation that Crossland and debtor intended the property description to include the residential property as well as the adjacent property.

In a last-ditch effort to reform the property description, Wells Fargo pointed to certain statements in debtor's deposition which he conceded making. The aim of Wells Fargo apparently was to show that debtor *admitted* that the property description was supposed to include both properties.

- 14 -

Debtor stated in his deposition, for instance, that he "assumed" the mortgage encumbered the residential property as well the adjacent property because he "would have thought that would have been the better decision" for Crossland based on the values of the residential property and the adjacent property.  He also stated in the deposition that at the time of the closing he "thought" the residence was consideration for the loan.

Although tantalizing, debtor's deposition testimony was not sufficiently weighty, either in isolation or in conjunction with the other matters previously addressed, to decisively "tip the scale" and lead the court to conclude *without hesitation* that Wells Fargo's cross-motion to reform the property description must be granted.  What debtor "assumed" and "thought" was not sufficiently categorical.  Unfortunately for Wells Fargo, it did not aggressively pursue these statements at the evidentiary hearing and force debtor to categorically admit that both properties were meant to be included in the property description.

The most egregious shortcoming in the evidence produced by Wells Fargo is that it did not call anyone with first-hand knowledge of the 1999 transaction to testify as to the values of the two properties in August of 1999 or as to the intention of Crossland and debtor at that time.  Why it did not call such a witness is not clear.  Had it done so, the outcome of Wells Fargo's cross-motion might have been different.

We have grave misgivings concerning debtor's character and did not perceive him sympathetically.  We commented earlier in this memorandum opinion, for instance, that the mortgage in the residential property he granted the Mark J. Leach Irrevocable Trust

- 15 -

was a blatant after-the-fact stratagem which obviously was meant to prevent anyone other than the trust from asserting a prior interest in the residential property.

One might reasonably question whether debtor owed any debt at all to the trust. When asked at the hearing whether there was a promissory note indicating that he in fact owed it a debt, debtor paused and testified that he did not realize that the note would become an issue and consequently did not bring it to court.  It also is questionable whether the trust would ever declare that debtor was in default of his obligation under the alleged note in the event of non-payment because debtor effectively controls the trust.

In spite of such grave misgivings, we are duty-bound to arrive at a decision only after assessing the evidence Wells Fargo produced at the hearing in support of its cross-motion.  We have indicated at great length that its "proof" was seriously deficient.  What we might think of debtor's character must be set aside in light of this deficiency.  The equities in this matter may favor Wells Fargo, but the law does not.

We therefore conclude in light of all the above considerations that the cross-motion of Wells Fargo to reform the mortgage to include the residential property in the description of the property subject to the mortgage must be denied.  The mortgage lien of Wells Fargo attaches only to the adjacent property.  There is no point in light of this to  consider the request by Wells Fargo for relief from the automatic stay.

- 16 -

## COUNT II

Debtor seeks in Count II of his motion to avoid judicial liens in favor of: Charleroi Federal Savings Bank; General Electric; LVNV Funding; Mountbatten Surety Company; Northwestern Mutual; Zeppelin Marine; and Schwartz Izenson & Associates.  The judicial liens, debtor maintains, impair exemptions he has taken in the residential property and are avoidable by virtue of § 522(f)(1) of the Bankruptcy Code.

Despite receiving notice of the motion and of the date on which the motion was to be heard, none of the judicial lienholders with the exception of Northwestern Mutual responded to the motion or bothered to appear at the hearing.  For that reason, a default order will issue avoiding the judicial liens of: Charleroi Federal Savings Bank; General Electric; LVNV Funding; Mountbatten Surety Company; Zeppelin Marine; and Schwartz Izenson & Associates.  Failure of the court to issue such an order immediately after the initial hearing on the motion was due to an oversight.

As for Northwestern Mutual, an evidentiary hearing on debtor's motion to avoid its judicial will be scheduled.  The order scheduling an evidentiary hearing on debtor's motion to "avoid" the lien of Wells Fargo made no mention of his motion to avoid the judicial lien of Northwestern Mutual.

## TRUSTEE'S MOTION TO ACCEPT PAYMENT OF $6,500
## IN LIEU OF SELLING THE RESIDENTIAL PROPERTY

The chapter 7 trustee has brought a motion for leave to accept payment from debtor in the amount of $6,500 in lieu of selling the residential property to someone other than debtor. It is doubtful, the chapter 7 trustee maintains, that she will be able to realize more than this amount if she attempts to sell the property to a third party.

An appraisal recently commissioned by the chapter 7 trustee indicates that the residential property presently is worth $200,000. Debtor has retreated from his declaration in the bankruptcy schedules that the residential property was worth $200,000 as of the petition date and cites an appraisal indicating that it presently is worth $170,000.

The chapter 7 trustee asserts in her motion that the residential property is subject to a mortgage in the principal amount of $140,000. Although it is not so identified in the motion, the mortgage undoubtedly is the one that was granted in January of 2005 to the Mark J. Leach Irrevocable Trust to secure payment of an alleged antecedent debt in that amount.

As has been noted, debtor claimed an exemption in the residential property in the amount of $20,200, the maximum amount permitted by § 522(d)(1). The exemptions debtor claimed in the residential property, however, did not end there. He also claimed an exemption in the residential property in the amount of $11,200. The purported basis for the second exemption was § 522(d)(5).

- 18 -

The second exemption exceeded the maximum amount permitted by § 522(d)(5). A debtor in bankruptcy may claim an exemption in any property in the amount of $1,075 plus any *unused* portion of a § 522(d)(1) exemption. 11 U.S.C. § 522(d)(5). Assuming (counterfactually) that $10,125 of the exemption permitted by § 522 (d)(1) remained unused, the maximum amount of debtor's exemption permitted by § 522(d)(5) would be $11,200 ($1,075 + $10,125 = $11,200). This happens to be the amount of debtor's claimed § 522(d)(5) exemption.

This assumption, however, is incorrect. The amount of Debtor's § 522(d)(5) exemption was improper. Because he already had claimed the maximum amount of an exemption permitted by § 522(d)(1), the maximum amount that debtor was permitted to claim under § 522(d)(5) was only $1,075.

But neither the chapter 7 trustee nor any party in interest objected to the amount of debtor's § 522(d)(5) within the period of time prescribed by Federal Rule of Bankruptcy Procedure 4003(b)(1).

Debtor's § 522(d)(5) exemption in the amount of $11,200 consequently must be allowed. If a timely objection to an exemption is not raised, the exemption is allowed in the amount claimed. 11 U.S.C. § 522(l). This is the case even if the exemption is not "colorable". *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

The chapter 7 trustee *in*correctly stated that the total amount of debtor's exemption in the residential property is $21,275 ($20,200 + $1,075 = $21,275). Because neither the

- 19 -

chapter 7 trustee nor any party in interest objected to debtor's § 522(d)((5) exemption, the allowed amount of the exemption is $31,400 ($20,200 + $11,200 = $31,400), and not $21,275 as the chapter 7 trustee claims in her motion.

Using the appraised value of $200,000 for the present value of the residential property, the chapter 7 trustee divided this value by one-half and asserted that the value of debtor's interest in the property is $100,000. She did the same with the purported outstanding balance of $140,000 owed on the mortgage in favor of the Mark J. Leach Irrevocable Trust and asserted that the debtor is responsible for $70,000 of the principal amount due on the mortgage. By the trustee's calculation, the value of debtor's interest in the residential property exceeds the principal balance of the mortgage for which he is liable by $30,000 ($100,000 − $70,000 = $30,000).

According to the chapter 7 trustee's calculation, debtor's share of the equity available in the residential property after his exemptions are accounted for would be $8,725 ($30,000 − $21,275 = $8,725). She proposes selling this equity to debtor for $6,500.

The chapter 7 trustee's assertion concerning the equity remaining after debtor's exemptions are accounted for is incorrect. We have determined that the amount of debtor's *allowed* exemptions in the residential property totals $31,400. This amount *exceeds* the purported value of debtor's interest in the residential property by $1,400 ($31,400 − $30,000 = $1,400). No equity remains, in other words, because the trustee failed to object to the amount of debtor's claimed § 522(d)(5) exemption.

- 20 -

All of this notwithstanding, debtor has expressed a willingness to pay the chapter 7 trustee the sum of $6,500 to purchase any equity remaining after debtor's portion of the purported debt owed to the Mark J. Leach Irrevocable Trust ($70,000) and his § 522(d)(1) exemption ($20,200) are subtracted from the value of debtor's interest in the residential property ($100,000).

A review of the record in this bankruptcy case suggests that this amount comprises the entirety of debtor's bankruptcy estate that is available for distribution by the chapter 7 trustee.

Applying a bird-in-the-hand approach to this motion, we conclude that the motion by the chapter 7 trustee should be granted. Assuming that a buyer would come forward, it is highly unlikely that more than $6,500 would be realized if the chapter 7 trustee tried to sell debtor's interest in the residential property.

An order disposing of all of the above matters will issue.

_____

BERNARD MARKOVITZ
U.S. Bankruptcy Judge

Dated: **February 23, 2010**

FILED

FEB 23 2010

- 21 -

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| **MARK J. LEACH,** : | **Bankruptcy No. 09-21594BM** |
| : | |
| : | |
| **Debtor** : | **Chapter 7** |
| **MARK J. LEACH,** : | |
| : | |
| **Movant** : | |
| : | |
| **v.** : | **Doc. # 21:  Debtor's Motion** |
| : | **To Avoid Liens** |
| **WELLS FARGO HOME MORTGAGE;** : | |
| **CHARLEROI FEDERAL SAVINGS** : | **Doc. # 30:  Trustee's  Motion To** |
| **BANK; GENERAL ELECTRIC; LVN** : | **Accept Payment From Debtor To** |
| **FUNDING, INC.; MOUNT BATTEN** : | **Redeem Equity In Realty In Lieu** |
| **SURETY COMPANY, INC.;** : | **Of Sale Of Same** |
| **NORTHWESTERN MUTUAL;** : | |
| **ZEPPLIN MARINE; and SCHWARTZ** : | |
| **IZENSON AND ASSOCIATES,** : | |
| : | |
| **Respondents** : | |

## ORDER OF COURT

**AND NOW**, this **23rd** day of **February**, 2010, for reasons set forth in the

foregoing memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** as

follows:

(1) The cross-motion of Wells Fargo Home Mortgage to reform the mortgage
and for relief from the automatic stay **SHALL BE** and hereby is **DENIED**.
The residential property in which debtor has an interest is **NOT** subject to
the mortgage presently held by Wells Fargo Home Mortgage.

(2) The judicial liens of: Charleroi Federal Savings Bank; General Electric;
LVNV Funding; Mountbatten Surety Company; Zeppelin Marine;  and
Schwartz Izenson & Associates **SHALL BE** and hereby are **AVOIDED**.

(3) The motion of the chapter 7 trustee to accept payment from debtor to redeem equity in realty in lieu of sale of same **SHALL BE** and hereby is **GRANTED**. Debtor shall **FORTHWITH** pay the sum of $6,500 to the chapter 7 trustee.

(4) An evidentiary hearing on debtor's motion to avoid the judicial lien of Northwestern Mutual will be issued at a later date.

It is **SO ORDERED**.

2-23-10

BERNARD MARKOVITZ
U.S. Bankruptcy Judge

*The Case Administrator Shall Send This Memorandum Opinion To The Following Parties:*
>    Mark J. Leach
>    Jonathan G. Babyak, Esquire
>    Elaine J. Wizzard, Esquire
>    Swartz Izenson & Associates
>    Matthew S. Marquette, Esquire
>    General Electric
>    Zepplin Marin, Inc.
>    Wells Fargo Home Mortgage c/o Gary J. Gaertner, Esquire
>    Charleroi Federal Savings Bank
>    Mount Batten Surety Company, Inc.
>    LVNV Funding, Inc.
>    Pamela J. Wilson, Esquire
>    Office of Untied States Trustee.

**FILED**

FEB 23 2010

- 2 -

CLERK. U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA